**L & P CONVERTERS, INC., Plaintiff,**

v.

**H.M.S. DIRECT MAIL SERVICE,
INC., Defendant.**

Civ. A. No. 86–207–Y.

United States District Court,
D. Massachusetts.

May 9, 1986.

James E. Wallace, Jr., Bowditch & Dewey, Worcester, Mass., for plaintiff.

Harris G. Gorab, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

In this action the plaintiff, L & P Converters, Inc. ("Converters"), seeks to recover monies allegedly owed it by the defendant, H.M.S. Direct Mail Service, Inc. ("Direct Mail"), for paper sold and delivered. The complaint in this case was filed originally in the Worcester Superior Court. Direct Mail then removed the case to this Court, alleging subject matter jurisdiction under 28 U.S.C. § 1332. Now before the Court is the motion of Direct Mail to dismiss for lack of personal jurisdiction.

The jurisdictional facts in this case are undisputed. Converters is a Massachusetts corporation with its principal place of business in Charlton, Massachusetts. Converters is engaged in the business of buying paper from brokers and selling it to printing companies and direct mail service companies. Direct Mail is a New York corporation with its principal place of business in Tonawanda, New York. Direct Mail is a direct mail service company. Direct Mail is licensed to do business only in New York.

Direct Mail began doing business with Converters as a result of a solicitation by a Converter agent at Tonawanda, New York. Between 1982 and 1986 the parties engaged in approximately 40 separate transactions in which Converters sold and Direct Mail purchased skids of paper. The total

value of these transactions was approximately $220,000. Each sale followed much the same course. Direct Mail would telephone Converters from New York to place an order. There were no formal written contracts governing the orders. Upon receiving telephone orders from Direct Mail, Converters delivered the paper to Direct Mail in New York using its own trucks. Most of the paper shipped to Direct Mail originated at Converters' warehouses in Massachusetts. Converters presented Direct Mail with invoices upon delivery of the paper in New York. It is not clear on this record whether Direct Mail made payment by mail or personally in New York. No agent of Direct Mail made any visit to Massachusetts in connection with Converters' sales.

■ The parties agree, as of course they must, that Direct Mail is amenable to suit in this Court only if the exercise of jurisdiction is authorized by a state or federal statute and the defendant has the requisite minimum contacts so that the exercise of personal jurisdiction will comport with due process. *Buckeye Associates, Ltd. v. Fila Sports, Inc.*, 616 F.Supp. 1484, 1487 (D.Mass.1985), citing *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). As this is a diversity case, the Court looks to Massachusetts law for the relevant statutory authorization. Converters argues that through the course of transactions outlined above Direct Mail "transacted" business in the Commonwealth within the meaning of the Massachusetts Long Arm statute, Mass.Gen.Laws ch. 223A, § 3(a). The Court agrees. Direct Mail's course of conduct here constitutes transacting business under the broad construction given that term by our Court of Appeals in its interpretation of Massachusetts law. *Bond Leather Co. v. Q.T. Shoe Manufacturing Co.*, 764 F.2d 928, 931–32 (1st Cir.1985).

■ Whether Direct Mail's relationship with Massachusetts is sufficient to satisfy due process concerns is an entirely separate matter, however. This Court has previously recognized that for purposes of determining minimum contacts a distinction must be made between "active" and "passive" out-of-state purchasers. *Phi Technologies v. New England Sound*, 634 F.Supp. 547 (D.Mass.1986). The cases in this circuit have "evinced a special concern for formulating a jurisdictional rule that would protect wholly passive purchasers, who do no more than place an order with an out of state merchant and await delivery." *Bond Leather Co. v. Q.T. Manufacturing Co., supra* at 933; *see also Whittaker Corp. v. United Aircraft Corp.*, 482 F.2d 1079 (1st Cir.1973) (jurisdiction upheld over only one of three out of state purchasers). This so called "contract plus" analysis, *id.* at 1084, which requires evidence of contacts in addition to placing the order, is consistent with the latest Supreme Court pronouncement on personal jurisdiction. In *Burger King Corp. v. Rudzewicz*, —— U.S. ——, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Court noted that where an out of state party contracts with a resident of the forum state, that contract alone does not establish sufficient minimum contacts. *Id.* 105 S.Ct. at 2185. The Court ultimately sustained the exercise of jurisdiction in that case because the defendant had "deliberate[ly] affiliat[ed]" himself with the forum state by entering into a franchise agreement with the plaintiffs. *Id.* 105 S.Ct. at 2187.

Applying this analysis to the case at bar, the Court rules that the record now before it does not establish minimum contacts between Direct Mail and Massachusetts. Direct Mail is a classic passive purchaser. It has done nothing to participate in the Massachusetts economy beyond placing the phone orders from New York. While over 40 separate transactions are alleged, nothing in the record suggests any continuing course of conduct between the parties separate from these transactions. There is not, for example, any evidence of continuous negotiations between the parties, either over the phone, by mail, or in Massachusetts. In short, the Court could not find Direct Mail amenable to suit without implicitly announcing a rule that would sub-

ject to its jurisdiction all out of state purchasers who choose to do business with Massachusetts residents. The cases already discussed make clear that such a rule is not the law in this circuit.

Accordingly, the motion to dismiss for lack of personal jurisdiction over Direct Mail is ALLOWED.